**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RALPH E. DLOUHY, | ) |
| | ) |
| | ) No. 07 C 0536 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Ralph Dlouhy asks the Court to reverse or remand the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), pursuant to Federal Rule Of Civil Procedure 56 and 42 U.S.C. § 405(g). The Commissioner's final decision denied Dlouhy's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 423, 1381 *et seq*. Defendant has filed a Cross-Motion for summary judgment, requesting that the Court affirm the Commissioner's final decision. For the reasons set forth below, the Court remands this case to the Commissioner on a limited basis in accordance with this Order.

**BACKGROUND**

**I.  Procedural Background**

Ralph Dlouhy applied for DIB and SSI on August 28, 2003, alleging that he became disabled on August 16, 2003, after suffering a heart attack. (R. 9-1, at 68-70, 373-375.) The Commissioner initially denied Dlouhy's applications and Dlouhy timely requested a hearing before an Administrative Law Judge ("ALJ"). On November 17, 2005, Mr. Dlouhy, along with his mother, a medical expert, and a vocational expert testified before the ALJ. (*Id.* at 382-433.) The ALJ,

Percival Harmon, determined that Mr. Dlouhy was not disabled within the meaning of the Social Security Act and therefore denied Dlouhy's DIB and SSI claims. (*Id.* at page 33.) Mr. Dlouhy filed a timely request for review of the ALJ's denial of benefits with the Social Security Administration's Appeals Council on January 17, 2006. (*Id*. at 21-22.) On December 2, 2006, the Appeals Council denied Dlouhy's request for review and adopted the ALJ's decision as the final decision of the Commissioner.

II.     **Factual Background**

Ralph Dlouhy was born in 1959 and completed high school and one year of travel agent training in Junior College. (*Id.* at 387.) Mr. Dlouhy is married, and both he and his wife live with his parents. (*Id.* at 388.) Dlouhy worked for the U.S. Postal Service sorting mail and loading trucks until 2001, at which time he was laid off. (*Id.* at 390.) Prior to his employment with the Postal Service, Mr. Dlouhy worked for nearly twenty years in the same job as a security guard and janitor. (*Id.* at 367, 391.) At the time of his hearing, Mr. Dlouhy was unemployed but helped out around his home, doing yard work, dusting, and emptying the garbage. (*Id.* at 396-397.) He leaves the house once a day to run errands, which include grocery shopping and picking up his medication from the drugstore. (*Id.* at 397, 423.) Mr. Dlouhy also leaves his home once a week to play Bingo. (*Id.* at 403.) While in the home, Mr. Dlouhy surfs the Internet, watches television, and reads the newspaper every day. (*Id.* at 404.) He wakes up every morning between 9:00 and 10:00 am and checks the mail. (*Id.* at 408.)

    A.     **Relevant Medical Evidence[1]**

        1.     **Lay Testimony**

---

[1] As discussed below, Mr. Dlouhy does not challenge the ALJ's findings related to his physical health conditions, therefore the Court focuses on Mr. Dlouhy's mental health conditions.

In August 2003, Mr. Dlouhy suffered a heart attack and underwent heart surgery. (*Id.* at 394-395.) Mr. Dlouhy has experienced no chest pains since the surgery (*Id.* at 395) and has zero percent blockage. (*Id.* at 419.) Mr. Dlouhy also suffers from periodic hand tremors which last four to five minutes. (*Id.* at 392-393.) In addition, Mr. Dlouhy experiences pain in his right knee which causes him to "take everything real slow." (*Id.* at 398-399.) Mr. Dlouhy also reports that he sometimes becomes short of breath and he feels fatigued (*Id.* at 407), and he is unable to stand for thirty minutes without sitting down. (*Id.* at 405.) Mr. Dlouhy is also diabetic. (*Id.* at 399.)

A general practitioner, Dr. Brad Wainer, prescribed Mr. Dlouhy medication for anxiety and depression, but Dlouhy has never visited a psychiatrist or psychologist or sought counseling. (*Id.* at 399, 401.) Dlouhy has "bad mood swings" but he takes medication that has decreased both the frequency and duration of his symptoms. (*Id.* at 401-402, 424.) In total, Mr. Dlouhy takes roughly ten different medications each day. (*Id.* at 108.)

### 2. Bernard Stevens, M.D.

Dr. Bernard Stevens reviewed Mr. Douly's medical records and testified at Mr. Dlouhy's hearing. He testified that Dlouhy is morbidly obese, has coronary artery disease, and has a minuscular tear in his right knee. (*Id.* at 416.) Dr. Stevens concluded that even with these limitations, Mr. Dlouhy is able to perform "sedentary work." (*Id.* at 419.) Dr. Stevens offered no opinions concerning Mr. Dlouhy's mental health, which is outside his area of expertise. (*Id.* at 416-420.)

### 3. Dr. Galassi-Hudspeth

Dr. Galassi-Hudspeth submitted two reports assessing Mr. Dlouhy's mental functioning capacity. (*Id.,* Exs. 17F, 18F, at 318-333.) Dr. Galassi-Hudspeth opined that Mr. Dlouhy's

3

limitations are "primarily physical." (*Id.*, Ex. 17F, at 320.) She did, however, categorize Mr. Dlouhy's "ability to interact appropriately with the general public" as "moderately limited." (*Id.* at 319.) As such, she recommended that Mr. Dlouhy should "not deal with the public" but opined that he could communicate with co-workers. (*Id.* at 319-320.) Dr. Galassi-Hudspeth also noted that Dlouhy was only mildly limited in his ability to maintain social functioning. (*Id.* at 332.) Contrary to the findings of Dr. Puntini, discussed below, Dr. Galassi-Hudpseth concluded that Mr. Dlouhy was not markedly limited in his ability to perform simple, unskilled work. (*Id.* at 318-320.) The record does not contain any evidence that Dr. Galassi-Hudspeth examined Mr. Dlouhy.

### 4. Dr. Nicolette Puntini, Ph.D.

Dr. Puntini, a clinical psychologist, met with Mr. Dlouhy for three and one half hours on March 4, 2004, in order to assess his "cognitive functioning, personality functioning and psychiatric status in light of his Social Security claim." (*Id.*, Ex. 4F, at 194.) Dr. Puntini concluded that Mr. Dlouhy's overall intellectual functioning is in the "Low Average" range. (*Id.* at 200.) Dr. Puntini also concluded that Mr. Dlouhy suffers from "a Generalized Anxiety Disorder" and that his interpersonal functioning is impaired such that his "psychological problems would interfere with his ability to maintain occupational relationships with coworkers, supervisors, and the general public." (*Id.* at 202-203.) She further found that Mr. Dlouhy was markedly limited in his ability to maintain social functioning and to maintain concentration, persistence, or pace. (*Id.*, Ex. 5F, at 214.) Dr. Puntini also completed a form entitled "Mental Residual Functional Capacity Assessment," in which she concluded that Mr. Dlouhy was "markedly limited" in many mental functioning categories, including the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others

4

without being distracted by them, the ability to interact appropriately with the general public, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* Ex. 15F, at 312.)

### 5. Dr. Brad Wainer, D.O.

Dr. Brad Wainer, Mr. Dlouhy's primary care giver from 1999 through 2005 (*Id.* at 365), submitted two forms assessing Mr. Dlouhy's physical residual functional capacity. (*Id.* Ex. 20F, 21F, at 344-348, 351-356.) In his January 6, 2005 assessment, Dr. Wainer indicated that Mr. Dlouhy was "incapable of even 'low stress' jobs," has a low IQ, suffers from depression, and has poor coping abilities. (*Id.* at 345-348.) Dr. Wainer also noted that Mr. Dlouhy was prescribed the drug Effexor for depression. (*Id.* at 345.) On September 29, 2005, Dr. Wainer again reported that Mr. Dlouhy's depression rendered him "incapable of even 'low stress' jobs." (*Id.* at 353.)

### B. Vocational Expert Testimony

Ms. Julie Bose, a "vocational expert," testified at Mr. Dlouhy's hearing concerning the types of jobs available in the economy for a worker suffering from various limitations. (*Id.* at 425-432.) The ALJ posed a hypothetical question to Ms. Bose concerning the ability of an individual with Mr. Dlouhy's physical limitations to perform certain work. Ms. Bose responded that a worker with Mr. Dlouhy's physical limitations would be capable of performing some types of sedentary work, including that of an office clerk, telephone clerk, telemarketing clerk, telephone research clerk, telephone quotation clerk, and sedentary cashier. (*Id.* at 428-429.) Ms. Bose estimated that in excess of 30,000 such jobs exist in the greater Chicago area. (*Id.*) Ms. Bose also testified that if a hypothetical worker with Mr. Dlouhy's physical limitations was also "incapable of even low stress jobs" then "[t]hat would rule out work altogether." (*Id.* at 431.)

5

## III. The ALJ's Ruling

On December 30, 2005, the ALJ found "after reviewing all of the evidence of record" that Mr. Dlouhy is not disabled within the meaning of the Social Security Act. (*Id.* at 26.) The ALJ concluded that Mr. Dlouhy had not been gainfully employed since the alleged onset of his disability and that Dlouhy is unable to perform his past jobs. (*Id.* at 32.) Although the ALJ concluded that Mr. Dlouhy suffered "severe" limitations, the ALJ further found that Mr. Dlouhy does not suffer from impairments that meet or equal one of the conclusively disabling impairments listed in the regulations. (*Id.*)

The ALJ further concluded that Mr. Dlouhy "does [not] have a complete inability to function independently outside the area of his home" and that Dlouhy is capable of performing "sedentary jobs" and has "the mental capacity for unskilled, routine tasks." (*Id.* at 30.) As such, the ALJ found that Mr. Dlouhy is "capable of performing a significant range of sedentary work." (*Id.* at 31.) Relying on the testimony of the vocational expert, and taking into account Mr. Dlouhy's age, education, work experience, and limitations, the ALJ concluded that Mr. Dlouhy is "capable of making a successful adjustment to work that exists in significant numbers in the national economy." (*Id.*)

The ALJ also found that both Mr. Dlouhy and his mother testified credibly. The ALJ, however, rejected the findings of Dr. Puntini, reasoning that Mr. Dlouhy's testimony along with the testimony of his mother, "establish a much higher level of functioning than is represented by the findings and conclusions of the one-time examiner, Dr. Puntini." (*Id.* at 29-30.)

## LEGAL STANDARDS

### I. Standard of Review

The Court reviews the ALJ's denial of Mr. Dlouhy's disability benefits pursuant to 42 U.S.C. § 405(g). Under Section 405(g), the findings of the ALJ are conclusive if supported by substantial evidence and adhere to the proper legal criteria. 42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence must be more than a scintilla but may be less than a preponderance. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court conducts "a critical review of the evidence," *Briscoe*, 425 F.3d at 351, but may not reweigh the evidence or substitute its judgment for that of the ALJ. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005). Rather, a reviewing court must determine whether the evidence is such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Moreover, the Court will affirm a denial of benefits only if the ALJ " buil[t] an accurate and logical bridge from [the] evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

## II.     Disability Standard

The ALJ applies a five-step analysis to determine whether someone is disabled for purposes of DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520 (DIB); 416.920 (SSI); *Sienkiewicz*, 409 F.3d at 802. In the first step, the ALJ considers the claimant's present work activity, if any. *See id*. §§ 404.1520(a)(4)(I); 416.920(a)(4)(I). Second, the ALJ weighs the severity of the claimant's impairment or impairments. *See id*. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the impairment or combination of impairments significantly restricts a claimant's physical or mental ability to perform basic work activities, then the ALJ should find the claimant disabled. *See id.* §§ 404.1520(c); 416.920(c). Third, the ALJ decides whether the impairment or combination of impairments meets or equals any of the conclusively disabling impairments listed in the regulations. *See id.* §§

7

404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the ALJ finds no disability in the first three steps, then he assesses the claimant's residual functional capacity ("RFC"). *See id.* §§ 404.1520(e); 416.920(e). The RFC takes into account all of the claimant's medically determinable impairments and gauges what work-related activities, if any, a claimant could perform despite his impairments. *See id.* §§ 404.1545(a); *Dixon*, 270 F.3d at 1178. At step four, the ALJ determines whether the RFC permits the claimant to perform his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If not, in the fifth and final step the ALJ uses the RFC assessment to determine if the claimant can perform any other work based on the claimant's age, education, and work experience. *See id.* §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

**ANALYSIS**

**I.     The ALJ's Five Step Analysis**

Applying the five step analysis, the ALJ found that: (1) Dlouhy had no history of substantial employment since the alleged onset of his disability; (2) Dlouhy had a variety of severe impairments, including post myocardial infarction, diabetes, mellitus, hypertension, obesity, a meniscal tear in his right knee, osteoarthritis, bilateral hand tremors, depression, and anxiety; (3) contrary to Dr. Puntini's report, Dlouhy did not have an impairment that met or equaled a listed impairment in Appendix 1, Subpart P, Regulations No. 4; (4) Dlouhy could not perform his past work; but (5) Dlouhy could perform several sedentary and unskilled occupations.

Mr. Dlouhy does not challenge the ALJ's findings concerning his physical disabilities. Rather, he challenges two interrelated conclusions made by the ALJ, namely: (1) his RFC determination, and (2) his rejection of Dr. Puntini's opinions in favor of the opinions of Dr. Galassi-Hudspeth.

## II. RFC Determination

Mr. Dlouhy argues that the ALJ erred by not factoring mental limitations into Dlouhy's RFC. (R. 12-1, Pl's Memo. In Supp. Of Mot. For Sum. Judg., at 3-4.) Stated differently, Mr. Dlouhy argues that the ALJ ignored evidence that he had significant mental limitations, which led him to erroneously conclude that there were jobs in the economy that Mr. Dlouhy could perform. As an initial matter, the record does contain substantial evidence that Mr. Dlouhy suffered mental limitations, but it is clear from the ALJ's decision that he took at least some of Mr. Dlouhy's mental limitations into account in formulating his decision. Indeed, after viewing the entire record, the ALJ concluded that "[Dlouhy's] mental impairments limit him only to the extent that he has moderate difficulties in maintaining concentration, persistence or pace and mild restrictions of activities of daily living and mild difficulties."

Despite the ALJ's statement that he took Mr. Dlouhy's mental limitations into account, several specific pieces of medical evidence warrant closer examination. First, Dr. Wainer opined that Mr. Dlouhy's mental functioning prevented him from performing "even low stress work." Second, Dr. Galassi-Hudspeth reviewed Mr. Dlouhy's records and concluded that Dlouhy "should not deal with the public." Third, Dr. Puntini diagnosed Mr. Dlouhy with severe anxiety and depression. The Court addresses each piece of evidence in turn.

### A. Inability to Perform Low Stress Jobs

To the extent Mr. Dlouhy argues that the ALJ should have accepted Dr. Wainer's conclusion that Douhly could not perform "even low stress" jobs, that argument fails. Dr. Wainer did not base his conclusion on a review of the entire record, thus it is not conclusive on the ultimate determination of RFC, which is reserved to the ALJ. *See* 20 C.F.R. § 404.1527(e)(1); *Clifford v.*

*Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  Moreover, Dr. Wainer's most recent report appears internally inconsistent, stating at one point that Dlouhy is "incapable of even low stress jobs" and at another that Dlouhy's "depression and knee pain limit activities [but that he is] able to work with stress."  *See Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000) ("Medical evidence may be discounted if it is internally inconsistent...."). Finally, substantial evidence in the record supports the ALJ's finding that Mr. Dlouhy is capable of performing low stress sedentary work.  Dr. Galassi-Hudspeth, for example, opined that Mr. Dlouhy's mental impairments did not have any marked limitations on his ability to perform simple, unskilled work.  Mr. Dlouhy also testified that he performed chores around the house and that his medication helped with the depression symptoms.

**B.      Inability to Interact with the General Public**

Mr. Dlouhy argues that the ALJ failed to consider his inability to deal with the public in formulating his RFC.  Mr. Dlouhy is correct that the ALJ did not include this limitation in the RFC or in the hypothetical scenario upon which the vocational expert relied.  Mr. Dlouhy is also correct that the hypothetical that an ALJ poses to a vocational expert ordinarily must include all limitations supported by medical evidence in the record, including mental limitations.  *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).  Thus, the Court must determine whether medical evidence in the record supports Mr. Dlouhy's claim that he is unable to interact with the public.

Dlouhy points to two pieces of medical evidence in the record in support of his claim that he is unable to interact with the general public.  First, Dlouhy points to Dr. Puntini's report, which states that Dlouhy's ability to interact with the general public is "markedly limited."  Second, Mr. Dlouhy relies heavily on Dr. Galassi-Hudspeth's report, which concluded that Dlouhy becomes "irritable" and therefore he "should not deal with the public."  As discussed below, the ALJ rejected

10

Dr. Puntini's opinions in favor of Dr. Galassi-Hudspeth's opinions, however, on this point Dr. Puntini's opinions are directly supported by Dr. Galassi-Hudspeth. As such, the uncontested medical evidence in the record supports Dlouhy's claim that he is unable to interact with the general public. Despite the unopposed medical evidence, the ALJ failed to specifically mention whether he considered this limitation in his RFC determination, and did not include it in the hypothetical question posed to the vocational expert. Moreover there is no evidence in the record that the vocational expert was aware of Mr. Dlouhy's inability to interact with the general public. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

It is possible, as the Commissioner points out, that the ALJ considered and then rejected Mr. Dlouhy's public interaction limitation, however, the ALJ failed to articulate this rejection in his decision. *See Dixon*, 270 F.3d at 1176; *Steele,* 290 F.3d at 941-942 ("[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision..."). Although the Commissioner points to circumstantial evidence in the record suggesting that Mr. Dlouhy interacted with the public, this lay evidence does not support the ALJ's rejection of the clear medical evidence. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003)(an ALJ improperly "play[s] doctor" when she makes a medical conclusion without expert evidence). Because the ALJ's decision at step five was based on a flawed or incomplete hypothetical, the denial of benefits cannot be upheld. *See Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004)("When the hypothetical question is fundamentally flawed ... the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand.").

The Court remands this limited issue for further proceedings to determine: (1) If the ALJ

considered the medical information evidencing Mr. Dlouhy's inability to interact with the public; and (2) If Mr. Dhouly is capable of performing any occupations with the additional limitation that he is unable to interact with the general public. *See id.*

## III.    Dr. Puntini's Opinions

Mr. Dlouhy also argues that the ALJ improperly favored Dr. Galassi-Hudspeth's conclusions over those of Dr. Puntini. The Court disagrees. The ALJ simply chose to weight Dr. Puntini's opinions less heavily than Mr. Dlouhy would have liked, because the opinions were inconsistent with the totality of the record. Indeed, the ALJ did exactly what he was supposed to do when presented with competing medical evidence – he evaluated it and favored the more persuasive evidence. *See generally* 20 C.F.R. §§ 404.1527(d); 416.927(d). Moreover, the ALJ stated his reason for favoring Dr. Galassi-Hudspeth's findings, noting that "[Dlouhy] and his mother's testimony about his activities of daily living establish a much higher level of functioning than is represented by the findings and conclusions of the one-time examiner, Dr. Puntini."

The record supports the ALJ's conclusion that Dr. Puntini's findings concerning many of Mr. Dlouhy's abilities were inconsistent with the record. Dr. Puntini, for example, opined that Mr. Dlouhy's ability to carry out detailed instructions, maintain attention and concentration, and perform activities within a schedule were "markedly limited." Mr. Dlouhy's own testimony, however, showed that Dlouhy read the newspaper and surfed the internet daily, played Bingo on a regular schedule, ran errands once a day, woke up at around the same time each day, took ten different medications daily, and frequently met with his doctors.

The ALJ also found Dr. Puntini's assessments "contrary to the weight of the other evidence," including the documentary evidence supplied by Dr. Galassi-Hudspeth. An ALJ may discount one

doctor's opinion if it is inconsistent with the opinion of another doctor "as long as the ALJ minimally articulates his reasons for crediting or rejecting evidence of disability." *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). As discussed above, the ALJ articulated his reason for rejecting Dr. Puntini's opinion and accepting Dr. Galassi-Hudspeth's.

Mr. Dlouhy suggests that the ALJ should have given Dr. Puntini's opinions more weight than those of Dr. Galassi-Hudspeth because Dr. Puntini examined Mr. Dlouhy. It is true that the Commissioner "generally" favors the opinions of an examining doctor over a non-examining doctor, 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1), but here the ALJ did not err because the examining doctor's opinions are contradicted by other testimony. *See id.* §§ 404.1527(d)(4)(consistency is a consideration for determining weight of medical evidence); 416.927(d)(4) (same); *see also Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)(noting that the proper weight to be given to a physician's opinions "depends on circumstances").

Having examined the record, the Court finds that both the ALJ's reasoning and the substantial evidence before the Court supports his rejection of Dr. Puntini's opinions. *See* 20 C.F.R. § 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

## CONCLUSION

For the reasons stated above, the Court remands to the Commissioner for further proceedings consistent with this Order. On remand, the Commissioner should determine whether the ALJ properly considered the medical information evidencing Mr. Dlouhy's inability to interact with the

general public, and whether any occupations exist for a person suffering from Mr. Dlouhy's limitations in combination with an inability to interact with the general public. Accordingly, the Court denies Mr. Dlouhy's motion for Summary Judgment, grants in part Mr. Dlouhy's motion for remand, and denies the Commissioner's Cross-Motion for Summary Judgment.

**Dated:** October 9, 2007

          **ENTERED**

          _____
          **AMY J. ST. EVE**
          **United States District Court Judge**